**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| SETANTA SPORTS NORTH AMERICA LIMITED, § | | |
| *Plaintiff,* § | | |
| § | | |
| v. § | | CIVIL ACTION H-07-2318 |
| § | | |
| ILIAS D. GIANNAKOPOULOS, *et al*, § | | |
| *Defendants.* § | | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is plaintiff Setanta Sports North America Ltd.'s ("Setanta") motion for summary judgment. Dkt. 19. Having reviewed the motion, all responsive submissions, and the applicable law, the court finds that the motion should be GRANTED in part and DENIED in part. Therefore, summary judgment is GRANTED in favor of Setanta on defendants' general liability under 47 U.S.C. § 605. Further, summary judgment is GRANTED *sua sponte* in favor of the defendants on the issue of enhanced damages authorized by § 605.

**BACKGROUND**

Setanta owned the exclusive rights to distribute to commercial establishments the March 24, 2007, Greece/Turkey soccer match ("Soccer Match"), a pay-per-view event. Dkt. 20 ¶ 3. The Soccer Match originated via satellite uplink and was subsequently retransmitted by Setanta to its commercial customers via cable, broadband, and/or satellite signal. *Id.* ¶ 6

Setanta hired auditors to identify establishments that unlawfully exhibited the program. *Id.* ¶ 9. On March 24, 2007, auditor Bryan Sprenger, entered defendant Ilias Giannakopoulos' establishment,[1] defendant Byzantio Café Bar ("Byzantio"), and observed a portion of the Soccer Match being exhibited to approximately sixty patrons on three television sets. Dkt. 20, Ex. A at 1-2.

---

[1] Giannakopoulos does not contest that he is the officer, director, shareholder and/or principal of Byzantio.

Neither Giannakopoulos nor Byzantio had authorization from Setanta to exhibit the Soccer Match. Dkt. 20 ¶ 11.

Defendant Giannakopoulos concedes that Byzantio is in fact a commercial establishment and did exhibit at least a portion of the Soccer Match. Dkt. 19 at 3. However, Giannakopoulos asserts that on March 24, Savvas Nikolaides "paid $250.000[sic] in order to reserve the place in order to view the Greece/Turkey soccer game." Dkt. 22 ¶ 6. Giannakopoulos asserts that entry was free and the food and drinks were brought to Byzantio by Savvas Nikolaides. Dkt. 21 at 1. Giannakopoulos further asserts that Nikkolaides legally purchased the Soccer Match from Jump TV. Dkt. 21 at 1.

Setanta filed its complaint on July 18, 2007, alleging that Giannakopoulos violated 47 U.S.C. §§ 553 and 605 of the Federal Communications Act ("FCA"). Recognizing that the courts will not allow recovery under both § 553 and § 605, Setanta moves for summary judgment of its claim under 47 U.S.C. § 605. *See Garden City Boxing Club, Inc. v. Vinson*, No. 03-0700, 2003 WL 22077958, at *3 (N.D. Tex Sept. 3, 2003) (denying recovery under § 553(a) because liability had been established under § 605(a)).

## STANDARD OF REVIEW

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Christopher Village, L.P. v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999). The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, there must be an absence of any genuine issue of material fact. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-248 (1986). An issue is "material" if its

resolution could affect the outcome of the action. *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001), *cert. denied*, 122 S.Ct. 347 (2001). "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact. *Id.* at 322. If the moving party fails to meet this burden, then they are not entitled to a summary judgment and no defense to the motion is required. *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting FED. R. CIV. P. 56(e)). If the burden of proof at trial with respect to an issue lies with the moving party, the burden is understandably heavier, and that party must show the absence of a genuine issue of material fact as to each element, rather than any single "essential element," of the of the claims for which they seek summary judgment. *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)(citing *Celotex*, 477 U.S. at 323).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 163-64 (5th Cir. 2006). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence, disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Jones v. Robinson Property Group, L.P.*, 427 F.3d 987, 993 (5th Cir. 2005). However, the nonmovant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Amer. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

## ANALYSIS

Setanta asserts that Giannakapoulos is liable pursuant to 47 U.S.C. § 605 rather than 47 U.S.C. § 553. In pertinent part, section 553 of the FCA provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a). Section 605 of the FCA provides that "[n]o person receiving . . . any interstate or foreign communication by wire or radio shall divulge or

4

publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception . . . to any person other than the addressee, his agent, or attorney . . . . " 47 U.S.C. § 605(a). Both sections provide for civil and criminal enforcement measures.

Generally speaking, section 553 applies to cable broadcasts and section 605 applies to satellite broadcasts. However, federal courts are divided as to whether and to what extent the FCA applies to the unauthorized interception and broadcast of cable transmissions that originated via satellite. The Second Circuit has found that § 605 applies to all interceptions of satellite signals, even after the signals have been picked up by coaxial cables. *See Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 131-33 (2d Cir. 1996). Conversely, the Seventh Circuit has held that the unauthorized interception of television programming transmitted by satellite is governed by § 605, but an unauthorized interception of programming transmitted through a cable network is governed by § 553. *United States v. Norris*, 88 F.3d 462, 468-69 (7th Cir. 1996).

The Fifth Circuit has recognized this split in authority but has yet to state its own interpretation of sections 553 and 605. *See Prostar v. Massachi*, 239 F.3d 669, 673 (5th Cir. 2001). This case, however, does not necessitate a choice between the two. The Soccer Match originated via a satellite uplink and was subsequently retransmitted to cable systems and satellite companies via satellite signal. Dkt. 19 at 6. Notably, the three televisions at Byzantio did not pick up the satellite feed through any cable system or coaxial cables. The affidavit of the auditor who discovered the exhibition of the Soccer Match stated that sometime during the game, one of the televisions showing the Soccer Match revealed a Microsoft Windows platform. Dkt. 20, Ex. A at 1. Apparently, the Jump TV satellite uplink on a computer was connected directly to the television

through S-Video, VGA, or RCA output cables. Further, the computer, and thus the television through the output cable, was connected directly to the satellite feed. Because a cable network was not involved in Byzantio's reception of the Soccer Match, the authority split is not implicated and § 605 governs this claim.[2]

## Vicarious Liability

Setanta seeks to hold Giannakopoulos vicariously liable for Byzantio's exhibition of the Soccer Match. Dkt.23 at 4. Because many § 605 cases involve the use of piracy devices, and § 605 "expressly prohibits assisting third parties in receiving communications to which they are not entitled," vicarious liability has not been discussed extensively as it concerns the FCA. *ON/TV of Chi. v. Julien*, 763 F.2d 839, 843 (7th Cir. 1985) (citing *Chartwell Commc'ns Group v. Westbrook*, 637 F.2d 459 (6th Cir. 1980)). "Since sale of a decoder obviously assists in receiving any interstate or foreign communication by radio and the use of such communication," normally, vicarious liability it not an issue. *Id.* at 833-34 (citing 47 U.S.C. § 605).

However, cases addressing violations of the Copyright Act, 17 U.S.C. § 101 *et seq.*, provide a clear standard for vicarious liability: "even in the absence of an employer–employee relationship, one may be vicariously liable if he has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *Gershwin Publ'g Corp. v. Columbia Artists Mgmt.*, 443 F.2d 1159 (2d Cir. 1971) (citing *Shapiro, Berstein & Co. v. H.L. Green Co.*, 316 F.2d 1159 (2d Cir. 1971)). Even though the FCA and the Copyright Act are distinct, the Fifth Circuit has found them analogous, applying the Copyright Act's period of limitations in FCA cases. *Prostar*, 239 F.3d at 677. Namely, "both protect proprietary rights in the context of cable transmissions."

---

[2] Giannakopoulos and Byzantio do not contest that Setanta's assertion that § 605 governs this case.

*Id.* Moreover, the copyright standard for vicarious liability has been adopted by courts in determining violations of § 605. *See J&J Sports Prods., Inc. v. Rosales*, No. 07-1113, 2008 WL 553292 (D. Colo. Jan. 30, 2008) (denying vicarious liability of the purported bar owner because there was no supporting evidence that he in fact owned the bar); *J & J Sports Prods., Inc. v. Meyers*, No. 06-5431, 2007 WL 2030288 (S.D.N.Y. July 16, 2007) (principal and sole proprietor of a beauty salon held vicariously liable for exhibiting boxing match in the salon); *see also J & J Sports Prods., Inc. v. Benson*, No 06-1119, 2007 WL 951872, at *7 (S.D.N.Y. Mar. 27, 2007) (discussed below).

In *Benson*, the court found the undisputed allegation that two individuals were served jointly as officers, directors, shareholders, and/or principals of the bar sufficient to establish the requisite right and ability to supervise as well as the parties' financial interest in the unlawful activity in the bar. *Benson*, 2007 WL 951872, at *7. Similarly, in the present case, it is uncontested that Giannakopoulos was the officer, director, shareholder and/or principal of Byzantio. In fact, in his own affidavit, Giannakopoulos refers to Byzantio as "my place" twice, conceding at least some ownership interest in the commercial establishment. Dkt 21. Additionally, Giannakopoulos concedes that Nikolaides paid $250.00 to rent Byzantio in order to watch the Soccer Match. Dkt. 22, ¶ 6. Therefore, Giannakopoulos had the requisite right and ability as well as a financial interest in supervising Byzantio. Consequently, Giannakopoulos is vicariously liable for the unauthorized exhibition of the Soccer Match at Byzantio.

### Violation of § 605(a)

To establish a prima facie case for violation of 47 U.S.C. § 605(a), Setanta needs only to establish that defendant Byzantio received, assisted in receiving, transmitted, or assisted in transmitting an interstate communication by wire or radio and broadcast, displayed, or divulged that

communication to at least one other person without authorization. *Garden City*, 2003 WL 22077958, at *2 (citing 47 U.S.C. § 605(a)).

Giannakopoulos admits that Byzantio did in fact exhibit some or all of the Soccer Match. Dkt. 19, ¶ 9. It is undisputed that Setanta owned the exclusive rights to distribute the Soccer Match to commercial establishments in Texas, and neither Giannakopoulos nor Byzantio had authorization from Setanta to exhibit the match. Dkt. 20, ¶¶ 3, 11. It is also undisputed that the Soccer Match was exhibited to approximately sixty patrons at Byzantio. Dkt. 20, Ex. A. Therefore, Byzantio violated § 605(a) by receiving the Soccer Match and displaying it to approximately sixty patrons without Setanta's authorization.

Defendants argue that an issue of material fact exists as to whether Setanta authorized Byzantio to exhibit the match. Giannakopoulos, in his affidavit, attests that the "receipt from the game was legally purchased from JumpTV [by Nikolaides] with the receipt showing valid payment." Dkt. 21.[3] Assuming that the receipt provided is accurate and Nikolaides did in fact purchase the event legally from JumpTV, Inc., JumpTV's authorization did not extend to exhibitions at commercial establishments, such as Byzantio. Dkt. 19, ¶ 9. JumpTV's terms of use describe the license as residential only and strictly prohibit broadcasts from being used for any commercial purposes. Dkt. 23, Ex. C, ¶ 1.5; *see also Garden City*, 2003 WL 22077958, at *2 (residential DirecTV pay-per-view purchase insufficient to show authorization in a commercial establishment under § 605(a)). Therefore,

---

[3]   The receipt attached is really no receipt at all, but rather an email from "Client-Support" under the email address, "no-reply@sportfive.com". Dkt. 21, Ex. 1. The email states that the "customer" purchased a pass for $7.95 USD for March 24, 2007. *Id.*

no issues of material fact remain, and Setanta is entitled to summary judgment on the issue of liability under 47 U.S.C. § 605(a) against Byzantio and Giannakopoulos, individually.[4]

## Enhanced Liability

When a violation of § 605(a) has been established, an additional $100,000 in enhanced damages is available where the violation was willful and committed for commercial advantage or financial gain. *Entertainment by J & J, Inc. v. Mama Zee Rest. & Catering Servs.*, No. 01-3945, 2002 WL 2022522 (E.D.N.Y. May 21, 2002) (citing 47 U.S.C. § 605(e)(3)(C)(ii)). "Willful" as used in these statutes means a "disregard for the governing statute and an indifference for its requirements." *Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc.*, 146 F. Supp. 2d 955, 959 (E.D. Wis. 2001) (citing *ON/TV v. Julien*, 763 F.2d 839, 844 (7th Cir. 1985)). In *Scott E's Pub*, the bar owner exhibited a pay-per-view boxing match without making any form of payment, residential or commercial, advertised the exhibition of the match beforehand, and required a cover charge to enter. *Id.* The court found that the boxing match could not have been exhibited innocently or mistakenly, and therefore found the bar owner liable for its willful exhibition. *Id.* Notably, in determining general liability under § 605, the court looked at the actions of the owner and his agents. However, when determining whether or not the owner and the bar were liable for enhanced damages, the court looked only at the actions of the owner, not the actions of his agents. *Id.*; *see also Garden City,* 2003 WL 22077958, at *3 (in determining enhanced liability, the court focused on the knowledge of the bar owner, not her agents, to ascertain whether § 605 was violated willfully).

---

[4] That no cover charge was assessed and Nikkolaides provided all of the food and drinks is immaterial to the question of liability under § 605(a). *See Garden City,* 2003 WL 22077958, at *2 ("[W]hether defendant charged an admission fee to customers is irrelevant for purposes of establishing liability under section 605(a) . . . .").

This court finds the subjective, individualized approach appropriate. Accordingly, in order to determine whether or not Giannakopoulos and Byzantio are liable for enhanced damages, the court should focus on their respective actions, and not those of Nikolaides. Unlike *Scott E's Pub*, Byzantio did not assess a cover charge or advertise the event. Dkt. 21. Furthermore, Nikolaides brought all of the food and drinks into the bar; no food or drinks were sold by Byzantio during the Soccer Match. *Id.* Also, none of the equipment from Byzantio was used to intercept the Soccer Match. *Id.* Most importantly, Giannakopoulos believed that Nikolaides legally purchased the game from JumpTV. *Id.* These facts are uncontested by Setanta.

Therefore, the summary judgment evidence indicates that neither Byzantio nor Giannakopoulos willfully violated § 605(a); hence, enhanced damages are not appropriate. Because discovery in this case has concluded, there remains no genuine issue of material fact as to defendants' enhanced liability for willfully violating § 605. Dkt. 6. Summary judgment is GRANTED in favor of the defendants on the issue of enhanced damages under 47 U.S.C. § 605(e)(3)(C)(ii).

## CONCLUSION

For the foregoing reasons, Setanta's motion for summary judgment is GRANTED in part and DENIED in part. Specifically, on the issue of defendants' general liability under 47 U.S.C. § 605, Setanta's motion is GRANTED.

However, the court finds that enhanced damages authorized by 47 U.S.C. § 605 are not warranted. Because there is no genuine issue of material fact as to defendants' willful violation of § 605, summary judgment is GRANTED *sua sponte* in favor of the defendants on the issue of enhanced liability.

Signed at Houston, Texas on June 25, 2008.

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY